# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

NATIONWIDE CHILDREN'S
HOSPITAL, INC., et al.,

   Plaintiffs,        Case No. 2:08-cv-1140
                JUDGE GREGORY L. FROST
   v.            Magistrate Judge Mark R. Abel

D.W. DICKEY & SON, INC.
EMPLOYEE HEALTH AND WELFARE
PLAN, et al.,

   Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss filed by D.W. Dickey & Son, Inc. (Doc. # 14), a combined memorandum in opposition and motion for judgment on the pleadings (Doc. # 25) filed by The Masters Agency d/b/a American Benefits Management, and a combined reply memorandum and memorandum in opposition (Doc. # 31) filed by D.W. Dickey & Son, Inc. For the reasons that follow, the Court finds that neither the motion to dismiss (Doc. # 14) nor the motion for judgment on the pleadings (Doc. # 25) are well taken.

## I.  Background

Plaintiffs Nationwide Children's Hospital, Inc., Children's Radiological Institute, Inc., Children's Anesthesia Associates, Inc., Children's Surgical Associates Corp., and Pediatric Academic Association, Inc. ("Children's Plaintiffs") are all not-for-profit corporations that are assignees of rights belonging to participants and beneficiaries in Defendant D.W. Dickey & Son, Inc. Employee Health and Welfare Plan ("the Plan"). The Plan is a self-insured group health and

1

disability plan that covers participants and their beneficiaries under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendant D.W. Dickey & Son, Inc. ("Dickey") is the plan sponsor and administrator, while Defendant The Masters Agency, Inc., which does business as American Benefits Management ("American Benefits"), is the third-party administrator for the plan. A non-party, United Re AG, is a reinsurer of the plan and is responsible for amounts exceeding the first $90,000.00 of claims.

According to the Children's Plaintiffs' Complaint, a Dickey employee identified as Robert Doe is a plan participant.[1] Robert Doe's son, John Doe, is a beneficiary of the Plan. In fall 2006, doctors discovered that John Doe had a pelvic tumor. John Doe obtained treatment at Children's Hospital from a number of oncologists, including Dr. Nick Yeager. Yeager diagnosed John Doe with Ewing's Sarcoma, an aggressive form of bone cancer that has a 20% survival rate in patients who undergo traditional treatment approaches.

John Doe was enrolled in a Children's Oncology Group ("COG") study initiated by The Hospital for Sick Children in Toronto, Canada. Patients in this study obtained standard chemotherapy treatment as well as two additional drugs, vinblastine and celecoxib, the latter of which is sold commercially as Celebrex. John Doe received such treatment from November 15, 2006 through July 10, 2007. According to the Children's Plaintiffs' pleading, John Doe received pre-certification and authorization for all dates of services for treatment while enrolled in the study, and Defendants approved substantially all of the claims John Doe submitted from late 2006 through the first half of 2007.

---

[1] The Court notes that Robert Doe has used his actual name in his filings. Because identification of the father implicitly reveals the identity of the minor son in this case, the Court will continue to use "Robert Doe" here.

Sometime in mid-2007, however, Defendants asserted that they became aware that John Doe was enrolled in a COG study. Thereafter, on September 5, 2007, American Benefits referred the claim for outside review. Strategic Health Development Corporation facilitated the review by referring the claim to an unidentified physician who opined, according to the Complaint, that although the use of vinblastine and Celebrex may be considered experimental, "the other [standard chemotherapy] agents <u>are not experimental</u>" and "the only charges which should be denied, <u>if any</u>, are those for vinblastine and the Celebrex."[2] (Doc. # 2 ¶ 41.)

In early November 2007, American Benefits submitted the matter to United re AG, which in turn issued a letter to American Benefits on November 6, 2007, that denied coverage. American Benefits then notified the Children's Plaintiffs on November 14, 2007, that the already approved and paid claims were not payable under the plan's "experimental and/or investigational" exclusion. The letter also indicated that the charges for standard of care and complications were not covered. Various repayment was initially sought: $442,034.03 from Children's Hospital, $19,796.66 from Pediatric Academic Association, $888.54 from Children's Radiological Institute, $1,313.00 from Children's Anesthesia Associates, and $59.49 from Children's Surgical Associates. In a subsequent amendment, American Benefits then sought repayment from Children's Hospital in the amount of $450,734.91.

The Children's Plaintiffs appealed the denial on January 3, 2008. Dr. Yeager submitted a letter as part of this appeal in which he stated that the drugs and treatment involved were neither

---

[2] The Children's Plaintiffs' Complaint states that the unidentified reviewing physician offered his or her opinion on August 22, 2007. (Doc. # 2 ¶ 41.) Given that the pleading also states that the claim was not referred for outside review until September 5, 2007, *see* Doc. # 2 ¶ 38, the Court assumes that the August 22, 2007 date is an error.

investigational nor experimental, but are instead the standard of care for metastatic Ewing's Sarcoma. Shelly Spieth of American benefits denied the appeal in a January 17, 2008 letter. A deadline of May 19, 2008, was established for a voluntary second level of appeal.

The Children's Plaintiffs timely appealed, and American Benefits referred the appeal for outside review. H.H.C. Group Health Insurance Consultants ("H.H.C. Group") facilitated the review by referring the appeal to Dr. Richard Bender, a Board Certified Internal Medicine Oncologist. Dr. Bender opined that the decision to treat John Doe in a clinical trial was "well within the standard of medical care" and that it had been his "considerable experience that these claims are always covered by carriers unless specifically excluded by policy language or benefits." (Doc. # 2 ¶ 59.) The doctor also stated:

> While one might choose to take exception to the addition of the costs of Celebrex and vinblastine (which are nominal in this case), the fact is that the multiagent chemotherapy program . . . is the standard medical care for Ewings sarcoma. As such, the therapy used for this young boy is neither "experimental" nor "investigational" for this pate[i]ent at this time. . . . This reviewer does NOT believe that American benefits' claim that the addition of Celebrex and vinblastine to the standard of care chemotherapy program transforms this program into 'I/E' treatment. Based upon all of the foregoing, the only possible charges that theoretically might be denied would be the cost of the oral Celebrex and the cost of the vinblastine. All of the other charges should be considered part of the standard of care and, therefore, should be paid.

(Doc. # 2 ¶ 60 (emphasis deleted).) American Benefits then asked H.H.C. Group to facilitate an additional review.

Dr. Della Livesay Howell, a pediatric hematologist-oncologist, conducted this third review. She opined:

> I agree with the recommendation of Dr. Bender. The treatment is not experimental or investigational and is considered a "standard of care" therapy for this patient. The carrier has mistakenly stated that because the patient was in a clinical trial that his treatment was experimental in nature. The previous denial for care because it was

4

> considered experimental should be overturned and the treatment authorized as medically necessary within the accepted practice for this type of disease.

(Doc. # 2 ¶ 63 (emphasis deleted).) Dr. Howell also stated:

> In this patient's case, this treatment plan, while part of a pilot study, is accepted as a medical practice properly within the range of appropriate care by pediatric oncologists across the country. The medications themselves have been accepted by the FDA for use as anti-angiogenesis agents, and they have already been shown to have some efficacy in similar tumors.
>
> The addition of celecoxib and vinblastine to this already accepted standard of care therapy for localized Ewing's sarcoma does not qualify as investigational or experimental therapy for this patient's disease, metastatic Ewing's sarcoma, a cancer that is much more difficult to treat. Therefore, the entire treatment of this patient should be covered under the policy plan.

(Doc. # 2 ¶ 64 (emphasis deleted).) Dr. Lester Leslie Sacks, the medical director for H.H.C. Group, reviewed Dr. Howell's conclusions, as well as Dr. Bender's conclusions, and "found [them] to be appropriate given the clinical information available for review." (Doc. # 2 ¶ 65.)

American Benefits forwarded the various doctors' reviews to United Re AG on June 20, 2008. United Re AG subsequently indicated in a July 1, 2008 letter to American Benefits that it was affirming its decision to deny benefits. An American Benefits representative consequently stated in a July 7, 2008 letter to the Children's Plaintiffs the following:

> As you are a ware [*sic*], the appeal came back in your favor. As this claim was initially denied by the stop loss carrier [United Re AG], we sent the medical review to them for reconsideration. They have subsequently re-denied the appeal based on the same experimental/investigational language.
>
> On Thursday last week, I sent the final medical review and the stop loss carrier's denial to the peer review company for an additional review on a high priority basis.
>
> Please be aware that D.W. Dickey is not authorizing any additional money to be paid on John's claims at this time. They are waiting for the final determination from the stop loss carrier.

(Doc. # 2 ¶ 70 (emphasis deleted).) Despite this communication, however, it appears that there

has been no ultimate decision on the Children's Plaintiffs' appeal.

It is unclear precisely what happened next. According to the Complaint, Defendants sent the claim to H.H.C. Group for a fifth review, but the latter company refused to facilitate such a review and stood by its opinion that the claim should be paid. Defendants deny these allegations. A period of silence followed in which American Benefits apparently declined to respond to the Children's Plaintiffs' inquiries regarding the status of the appeal.

What is more clear is that American Benefits responded after four inquiries from the Children's Plaintiffs that the appeal had been sent to Medical Mutual of Ohio, which coordinates medical providers under the plan. Despite this September 25, 2008 transfer for review, Defendants had not adjudicated the claim by the time the Children's Plaintiffs filed their Complaint on December 2, 2008. The Complaint asserts an ERISA claim for derivative benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), against the Plan, Dickey, and American Benefits.

On February 6, 2009, Dickey and the Plan filed an Answer in which they asserted counterclaims against the Children's Plaintiffs, Robert Doe, and John Doe. (Doc. # 7.) Count One of the counterclaims is a claim under 29 U.S.C. § 1132(a)(3) that seeks to recover from the Children's Plaintiffs those payments purportedly made in contravention of the plan terms. Count Two is a claim under that same statutory provision for equitable relief "to determine the rights of Counterclaim Defendants with respect to the enforcement of the Plan." (Doc. # 7 ¶ 43.)

American Benefits also filed an Answer in which the company asserts cross-claims against Dickey. (Doc. # 10.) Count One asks for a declaratory judgment that, pursuant to an Administration Agreement, Dickey is required to defend, indemnify, and hold harmless

6

American Benefits.  Count Two is a breach of contract claim based upon the Administration Agreement and Dickey's alleged failure to honor that agreement.  Count Three is a claim for attorney's fees incurred by American Benefits.

Robert Doe and John Doe have filed a Reply to the counterclaim and in turn assert their own counterclaims against Dickey, the Plan, and American Benefits.  (Doc. # 11.)  The Does assert that the Plan, through American Benefits, has wrongly denied over $684,623.96 in valid medical claims.  The Does assert one claim under 29 U.S.C. § 1132(a)(1)(B) for recovery of these medical claims (Count One), two 29 U.S.C. § 1132(a)(3) claims for breach of fiduciary duty (Counts Two and Three), one claim for equitable estoppel (Count Four), and three claims for failure to provide requested information under 29 U.S.C. § 1132(c) and for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Counts Five, Six, and Seven).

Dickey has filed a motion to dismiss (Doc. # 14) the cross-claim of American Benefits, which in turn filed a motion for judgment on the pleadings (Doc. # 25) on the cross-claim.[3] After an extended period of briefing, the motions are ripe for disposition.

## II. Discussion

### A. Standards Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which this Court may grant relief.  Under the United States Supreme Court's articulation of the analytic standard

---

[3] Other motions are also pending.  Dickey and the Plan have together filed a the motion to dismiss (Doc. # 15) the Doe claims, and American Benefits has filed a motion for judgment on the pleadings (Doc. # 22) on the Doe claims and a motion for judgment on the pleadings (Doc. # 28) on the Children's Plaintiffs' claims.

involved in applying this rule, this Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp . v. Twombly*, 550 U.S. 554, 570 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Recently, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court discussed the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158.

> But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1949-50.

It is well settled that even after *Twombly*, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) necessitates analysis employing the same standard applicable to a Rule 12(b)(6) motion. *Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009); *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Thus, "[d]ismissal on a Rule 12(c) motion is appropriate when the factual allegations contained in the complaint, accepted as true, do not show that the pleader is entitled to relief." *Hill v. Mr. Money Finance Co. & First Citizens Banc Corp.*, 309 F. App'x 950, 955 (6th Cir. 2009).

**B. Analysis**

As noted, American Benefits is the Plan's third-party claims administrator. An Administration Agreement exists between American Benefits and Dickey that provides in relevant part:

> B. The defense of any legal action instituted as a result of a claim for benefits under the reimbursement plan shall not be an obligation of American. . . .
>
> C. In the event American, its officers, directors, employees or agents are made parties to any judicial or administrative proceedings arising in whole or in part out of any function performed by one or more of them under this Agreement, Employer shall hold them harmless for all judgments, settlements and costs (including attorneys' fees) which Employer incurs or pays in connection therewith, except that Employer shall not reimburse for the amount of any judgment of [*sic*] award (or attorneys' fees with respect thereto) if the court determines that the judgment or award was caused by the gross negligence, fraud or criminal conduct of American, its agents, employees, officers or directors. American hereby agrees to indemnify, defend, and hold Employer harmless from any and all claims, actions, damages, liabilities, costs, and expenses, including reasonable attorney's fees and expenses, which arise solely from the gross negligence, willful, reckless,

        fraudulent, or tortuous misconduct of American.

(Doc. # 10-1, Administration Agreement § 7.) American Benefits' cross-claim targets the alleged breach of the foregoing agreement provision. Dickey moves to dismiss the cross-claim of American Benefits while American Benefits moves for judgment on the pleadings on its cross-claim.

     Dickey's argument is that dismissal is warranted because it attempted to comply with § 7(C) of the Administration Agreement but American Benefits declined Dickey's offer to defend and indemnify. Dickey argues that its obligation to defend American benefits meant that Dickey was entitled under applicable state law to select American Benefits' counsel. When American Benefits elected to select its own counsel, Dickey reasons, American Benefits elected to forego indemnification and pay for its own defense.

     American Benefits of course disagrees. The company seeks judgment on the pleadings in the grounds that Dickey has conditioned its obligations on American Benefits' acquiescence to terms not found in the Administration Agreement. American Benefits also argues that Dickey's entire argument is premised upon events depicted only in correspondence extrinsic to the pleadings, which American benefits asserts it has not relied on; Dickey's argument for consideration of the documents in this context is that American Benefits relies upon the correspondence.

     Several threshold issues warrant comment before this Court can address the merits of the parties' dispute. This Court notes that the parties' dispute turns upon what appears to be the mutually agreed-upon intent of the Administration Agreement and not what it literally says. Section 7(C) of the agreement provides if American Benefits is made a party to litigation, then

"Employer"–i.e., Dickey– shall hold American Benefits harmless and shall reimburse costs "which *Employer* incurs or pay[s] in connection therewith." (Doc. # 10-1, Administration Agreement § 7 (emphasis added).) The construction that the parties' pleading and briefing generally gives the italicized use of "Employer" is that it actually means American Benefits.[4] This is logical, because actually crediting the language used would lead to the illogical result that the parties's contract means that if American Benefits is made a party to litigation, then Dickey shall hold American Benefits harmless and shall reimburse any costs that *Dickey* incurs or pays in connection with that litigation. American Benefits describes the bizarre scrivener's error as a mere typographical error, a characterization that as noted Dickey may appear to dispute, and the Court mentions the issue here only for purposes of noting that today's decision proceeds as if the revisionist or "corrected" characterization of the Administration Agreement is proper. Given that today's decision does not turn on the substance of the agreement, the Court emphasizes that it expresses no opinion here as to the ultimate meaning of the agreement language.

A second threshold matter distinct from the substantive merits of the case is whether American Benefits has filed a proper motion for judgment on the pleadings. Dickey argues that

---

[4] The Court uses the word "generally" because Dickey states for the first time at the end of its combined reply memorandum and memorandum in opposition that American Benefits "asks this Court to rewrite the Administrative Agreement based on a claimed 'typographical error.'" (Doc. # 31, at 8.) Dickey then asserts that "[b]ecause this Court cannot rewrite the Administrative Agreement as part of a motion for judgment on the pleadings, this Court must deny [American Benefits'] motion on this additional ground." (*Id.*) Two comments are warranted. First, it appears that Dickey may be endorsing at least as an alternative argument a reading of the agreement in which it does not have the potential obligations it otherwise acknowledges throughout its briefing. Second, the Court need not decide this issue here because, as discussed above, the motion for judgment on the pleadings is premature and the Court has denied the motion on that rationale, obviating the need to reach the "typographical error" argument that Dickey raises in a cursory manner.

11

the motion is improper because it is premature, and Dickey is correct. The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The relevant provisions of the Civil Rules provide for a complaint, an answer to that complaint that can assert a cross-claim, and an answer to the cross-claim. Fed. R. Civ. P. 7(a)(1), (2), & (4). The parties have filed only the first two pleadings here. Rather than filing an answer to American Benefits' cross-claim, Dickey has only filed its motion to dismiss. Accordingly, the pleadings have not yet closed so as to permit the filing of a motion for judgment on the pleadings. *Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co.*, No. 3:09CV792, 2009 WL 2901224, at *1 (N.D. Ohio Sept. 2, 2009) (striking a premature motion for judgment on the pleadings because "[f]iling a motion for judgment on the pleadings can occur only after a party has filed its answer"); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("Neither party can files a Rule 12(c) motion for judgment on the pleadings until the pleadings are 'closed.' "). This Court therefore **DENIES** American Benefits' premature motion for judgment on the pleadings. (Doc. # 25.)

This leaves for disposition Dickey's motion to dismiss. There is no question that this Court can consider the Administration Agreement in deciding the motion to dismiss; the cross-claim pleading quotes and references the agreement, which American Benefits has attached to its Answer and Cross-Claim. The extant question is whether this Court should consider the extrinsic evidence Dickey has submitted as attachments to its motion to dismiss.

None of the correspondence upon which Dickey relies was attached to American Benefits' pleading. Nor does the pleading directly reference the correspondence Dickey asks

this Court to consider. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (adopting proposition that " '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim' " (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))). Rather, American Benefits' pleading obliquely states only that it "has asked Dickey to defend, indemnify and hold [American Benefits] harmless under the terms of the Administration Agreement, but Dickey has not done so." (Doc. # 10, at 21 § 17.) It is arguably an exceptionally close call, but contrary to Dickey's argument, this Court concludes that the quoted single sentence does not rise to the level of incorporating by reference the documents and their factual content upon which Dickey seeks to rely. Rather than merely verifying the pleading, the additional material adds new substantive content to the case: a reason for the denial. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) ("[I]n ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court generally may not consider any facts outside the complaint and exhibits attached thereto."). This is an important fact in light of controlling precedent.

The Sixth Circuit has approved a district court's consideration of "matters outside the pleadings . . . [when] those matters simply filled in the contours and details of the plaintiff's complaint, and added nothing new." *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). In reaching this conclusion, the court of appeals expressly noted that "[t]he district court does not appear to have relied on the [extrinsic] affidavits, in the sense that its rationale in any way hinged on the additional information provided there." *Id.* In contrast, the extrinsic evidence at issue here presents additional, new information that would provide the basis

13

upon which this Court would necessarily rely in deciding the merits of Dickey's substantive argument. This Court will not consider such extrinsic factual material. *Hogan v. Kokosing Const. Co., Inc.*, No. 2:08-cv-01052, 2009 WL 3124317, at *4 (S.D. Ohio Sept. 29, 2009) ("Rule 12(b)(6), however, requires the Court to limit its analysis to the allegations in the Complaint and prohibits a decision based on additional information outside the pleadings.").

The Court in its discretion thus declines to consider the new factual material that was submitted outside the pleadings and declines to convert the motion to dismiss into a motion for summary judgment. Dickey argues that the Court must grant its motion to dismiss even if it does not consider the extrinsic evidence, however, because the parties' "dispute can be resolved without reference to the documents attached to Dickey's motion under *Pilkington North America, Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 488, 2006 Ohio 6551 ¶ 34, 861 N.E.2d 121, 127 (2006)." (Doc. # 31, at 3.) But what this argument overlooks is that absent the explanatory extrinsic evidence, this Court is left with no facts indicating why Dickey has allegedly declined to honor the Administration Agreement.

Dickey directs this Court to several nearly identical paragraphs of American Benefits' pleading in an apparent effort to show that the pleading "alleges that Dickey failed to satisfy its obligations under the terms of the Administration Agreement . . . by allowing [American Benefits] to select its own counsel to defend it." (Doc. # 31, at 3.) The cross-claim paragraphs that Dickey cites provide that "Dickey is obligated to defend, indemnify and hold [American Benefits] harmless against all judgments, settlements and costs, including attorney's fees of [American Benefits'] own counsel" related to this litigation. (Doc. # 10, at 20-21 ¶¶ 9, 12, 13, & 15.) This pleading does not stand for the proposition that Dickey asserts it does. American

14

Benefits has alleged only what it asserts Dickey's obligations are, not that there was a dispute over the selection of counsel and that Dickey asserted such a dispute as the basis for not proceeding under the Administration Agreement.

Without facts indicating that such a dispute occurred and why there was a denial, there is no basis to apply or not apply the state case to which Dickey directs this Court. There are simply factual pleadings indicating alleged obligations arising from the Administration Agreement and an unexplained decision not to honor that agreement. This pleading presents a plausible claim sufficient to withstand a Rule 12(b)(6) motion to dismiss.

Accordingly, regardless of whether Dickey's theory for dismissal is correct–that Ohio law permits the indemnitor to select counsel for the indemnified–there are no grounds to apply that law in this case and to these pleadings at this time. Such grounds are likely to arise in later proceedings in this case involving one or more Rule 12(c) motions (if the documents become part of a subsequent pleading) or Rule 56 motions, but they are not properly before this Court here. The Court therefore **DENIES** Dickey's motion to dismiss. (Doc. # 14.)

A final comment is necessary. In its combined reply memorandum and memorandum in opposition, Dickey states in a footnote that it "supports and hereby joins" in a motion to dismiss filed by American Benefits that targets the Children's Plaintiffs' Complaint. (Doc. # 31, at 2 n.1.) Dickey also states in that same footnote that if this Court construes American Benefits' motion for judgment on the pleadings targeting the Doe claims as a motion to dismiss, then "Dickey joins in that motion." (*Id.*) Similarly, Dickey asserts in another footnote later in its combined reply memorandum and memorandum in opposition that the Children's Plaintiffs included American Benefits as a party in this litigation "solely to maximize the cost of litigation

15

in an effort to compel a more satisfactory settlement or capitulation by Dickey and the Plan." (Doc. # 31, at 7 n.6.) Thus, Dickey concludes, "the cost of [American Benefits'] defense should be borne by Plaintiffs' counsel due to the vexatious multiplication of litigation. 28 U.S.C. § 1927." (*Id.*) If Dickey intended either footnote to constitute a proper request for court action, as opposed to truncated argument-by-incorporation in regards to "joining" various motions and perhaps mere overly dramatic posturing in regard to § 1927 sanctions, Dickey has failed to comply with the Local Civil Rules' requirement of how to file such requests. *See* S. D. Ohio Civ. R. 7.2 (setting forth the requirements for filing a motion). Without addressing whether any of Dickey's requests would have any merit whatsoever, the Court notes that neither footnote constitutes a motion upon which this Court can or will act.

### III. Conclusion

For the foregoing reasons, this Court **DENIES** Dickey's motion to dismiss (Doc. # 14) and **DENIES** American Benefits' motion for judgment on the pleadings (Doc. # 25).

**IT IS SO ORDERED**.

                                       /s/ Gregory L. Frost
                                       GREGORY L. FROST
                                       UNITED STATES DISTRICT JUDGE