# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NATIONWIDE CHILDREN'S
HOSPITAL, INC., et al.,

        Plaintiffs,

    v.

D.W. DICKEY & SON, INC.
EMPLOYEE HEALTH AND WELFARE
PLAN, et al.,

        Defendants.

Case No. 2:08-cv-1140
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss counterclaims (Doc. # 15) filed by D.W. Dickey & Son, Inc. and D.W. Dickey & Son, Inc. Employee Health and Welfare Plan, a memorandum in opposition (Doc. # 30) filed by John and Robert Doe, a memorandum in opposition (Doc. # 38) filed by Nationwide Children's Hospital, Inc., Children's Radiological Institute, Inc., Children's Anesthesia Associates, Inc., Children's Surgical Associates Corp., and Pediatric Academic Association, Inc., and reply memoranda (Docs. # 34, 59) filed by D.W. Dickey & Son, Inc. and D.W. Dickey & Son, Inc. Employee Health and Welfare Plan. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss. (Doc. # 15.)

### I. Background

Plaintiffs Nationwide Children's Hospital, Inc., Children's Radiological Institute, Inc., Children's Anesthesia Associates, Inc., Children's Surgical Associates Corp., and Pediatric Academic Association, Inc. ("Children's Plaintiffs") are all not-for-profit corporations that are

assignees of rights belonging to participants and beneficiaries in Defendant D.W. Dickey & Son, Inc. Employee Health and Welfare Plan ("the Plan"). The Plan is a self-insured group health and disability plan that covers participants and their beneficiaries under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendant D.W. Dickey & Son, Inc. ("Dickey") is the plan sponsor and administrator, while Defendant The Masters Agency, Inc., which does business as American Benefits Management ("American Benefits"), is the third-party administrator for the plan. A non-party, United Re AG, is a reinsurer of the plan and is responsible for amounts exceeding the first $90,000.00 of claims.

According to the Children's Plaintiffs' Complaint, a Dickey employee identified as Robert Doe is a plan participant.[1] Robert Doe's son, John Doe, is a beneficiary of the Plan. In fall 2006, doctors discovered that John Doe had a pelvic tumor. John Doe obtained treatment at Children's Hospital from a number of oncologists, including Dr. Nick Yeager. Yeager diagnosed John Doe with Ewing's Sarcoma, an aggressive form of bone cancer that has a 20% survival rate in patients who undergo traditional treatment approaches.

John Doe was enrolled in a Children's Oncology Group ("COG") study initiated by The Hospital for Sick Children in Toronto, Canada. Patients in this study obtained standard chemotherapy treatment as well as two additional drugs, vinblastine and celecoxib, the latter of which is sold commercially as Celebrex. John Doe received such treatment from November 15, 2006 through July 10, 2007. According to the Children's Plaintiffs' pleading, John Doe received pre-certification and authorization for all dates of services for treatment while enrolled in the

---

[1] The Court notes that Robert Doe has used his actual name in his filings. Because identification of the father implicitly reveals the identity of the minor son in this case, the Court will continue to use "Robert Doe" here.

study, and Defendants approved substantially all of the claims John Doe submitted from late 2006 through the first half of 2007.

Sometime in mid-2007, however, Defendants asserted that they became aware that John Doe was enrolled in a COG study. Thereafter, on September 5, 2007, American Benefits referred the claim for outside review. Strategic Health Development Corporation facilitated the review by referring the claim to an unidentified physician who opined, according to the Complaint, that although the use of vinblastine and Celebrex may be considered experimental, "the other [standard chemotherapy] agents <u>are not experimental</u>" and "the only charges which should be denied, <u>if any</u>, are those for vinblastine and the Celebrex."[2] (Doc. # 2 ¶ 41.)

In early November 2007, American Benefits submitted the matter to United re AG, which in turn issued a letter to American Benefits on November 6, 2007, that denied coverage. American Benefits then notified the Children's Plaintiffs on November 14, 2007, that the already approved and paid claims were not payable under the plan's "experimental and/or investigational" exclusion. The letter also indicated that the charges for standard of care and complications were not covered. Various repayment was initially sought: $442,034.03 from Children's Hospital, $19,796.66 from Pediatric Academic Association, $888.54 from Children's Radiological Institute, $1,313.00 from Children's Anesthesia Associates, and $59.49 from Children's Surgical Associates. In a subsequent amendment, American Benefits then sought repayment from Children's Hospital in the amount of $450,734.91.

---

[2] The Complaint states that the unidentified reviewing physician offered his or her opinion on August 22, 2007. (Doc. # 2 ¶ 41.) Given that the pleading also states that the claim was not referred for outside review until September 5, 2007, *see* Doc. # 2 ¶ 38, the Court assumes that the August 22, 2007 date is an error.

The Children's Plaintiffs appealed the denial on January 3, 2008. Dr. Yeager submitted a letter as part of this appeal in which he stated that the drugs and treatment involved were neither investigational nor experimental, but are instead the standard of care for metastatic Ewing's Sarcoma. Shelly Spieth of American benefits denied the appeal in a January 17, 2008 letter. A deadline of May 19, 2008, was established for a voluntary second level of appeal.

The Children's Plaintiffs timely appealed, and American Benefits referred the appeal for outside review. H.H.C. Group Health Insurance Consultants ("H.H.C. Group") facilitated the review by referring the appeal to Dr. Richard Bender, a Board Certified Internal Medicine Oncologist. Dr. Bender opined that the decision to treat John Doe in a clinical trial was "well within the standard of medical care" and that it had been his "considerable experience that these claims are always covered by carriers unless specifically excluded by policy language or benefits." (Doc. # 2 ¶ 59.) The doctor also stated:

> While one might choose to take exception to the addition of the costs of Celebrex and vinblastine (which are nominal in this case), the fact is that the multiagent chemotherapy program . . . is the standard medical care for Ewings sarcoma. As such, the therapy used for this young boy is neither "experimental" nor "investigational" for this pate[i]ent at this time. . . . This reviewer does NOT believe that American benefits' claim that the addition of Celebrex and vinblastine to the standard of care chemotherapy program transforms this program into 'I/E' treatment. Based upon all of the foregoing, the only possible charges that theoretically might be denied would be the cost of the oral Celebrex and the cost of the vinblastine. All of the other charges should be considered part of the standard of care and, therefore, should be paid.

(Doc. # 2 ¶ 60 (emphasis deleted).) American Benefits then asked H.H.C. Group to facilitate an additional review.

Dr. Della Livesay Howell, a pediatric hematologist-oncologist, conducted this third review. She opined:

I agree with the recommendation of Dr. Bender. The treatment is not experimental or investigational and is considered a "standard of care" therapy for this patient. The carrier has mistakenly stated that because the patient was in a clinical trial that his treatment was experimental in nature. The previous denial for care because it was considered experimental should be overturned and the treatment authorized as medically necessary within the accepted practice for this type of disease.

(Doc. # 2 ¶ 63 (emphasis deleted).) Dr. Howell also stated:

In this patient's case, this treatment plan, while part of a pilot study, is accepted as a medical practice properly within the range of appropriate care by pediatric oncologists across the country. The medications themselves have been accepted by the FDA for use as anti-angiogenesis agents, and they have already been shown to have some efficacy in similar tumors.

The addition of celecoxib and vinblastine to this already accepted standard of care therapy for localized Ewing's sarcoma does not qualify as investigational or experimental therapy for this patient's disease, metastatic Ewing's sarcoma, a cancer that is much more difficult to treat. Therefore, the entire treatment of this patient should be covered under the policy plan.

(Doc. # 2 ¶ 64 (emphasis deleted).) Dr. Lester Leslie Sacks, the medical director for H.H.C. Group, reviewed Dr. Howell's conclusions, as well as Dr. Bender's conclusions, and "found [them] to be appropriate given the clinical information available for review." (Doc. # 2 ¶ 65.)

American Benefits forwarded the various doctors' reviews to United Re AG on June 20, 2008. United Re AG subsequently indicated in a July 1, 2008 letter to American Benefits that it was affirming its decision to deny benefits. An American Benefits representative consequently stated in a July 7, 2008 letter to the Children's Plaintiffs the following:

As you are a ware [*sic*], the appeal came back in your favor. As this claim was initially denied by the stop loss carrier [United Re AG], we sent the medical review to them for reconsideration. They have subsequently re-denied the appeal based on the same experimental/investigational language.

On Thursday last week, I sent the final medical review and the stop loss carrier's denial to the peer review company for an additional review on a high priority basis.

Please be aware that D.W. Dickey is not authorizing any additional money to be paid

on John's claims at this time. They are waiting for the final determination from the stop loss carrier.

(Doc. # 2 ¶ 70 (emphasis deleted).) Despite this communication, however, it appears that there has been no ultimate decision on the Children's Plaintiffs' appeal.

It is unclear precisely what happened next. According to the Complaint, Defendants sent the claim to H.H.C. Group for a fifth review, but the latter company refused to facilitate such a review and stood by its opinion that the claim should be paid. Defendants deny these allegations. A period of silence followed in which American Benefits apparently declined to respond to the Children's Plaintiffs' inquiries regarding the status of the appeal.

What is more clear is that American Benefits responded after four inquiries from the Children's Plaintiffs that the appeal had been sent to Medical Mutual of Ohio, which coordinates medical providers under the plan. Despite this September 25, 2008 transfer for review, Defendants had not adjudicated the claim by the time the Children's Plaintiffs filed their Complaint on December 2, 2008. The Complaint asserts an ERISA claim for derivative benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), against the Plan, Dickey, and American Benefits.

On February 6, 2009, Dickey and the Plan filed an Answer in which they asserted counterclaims against the Children's Plaintiffs, Robert Doe, and John Doe. (Doc. # 7.) Count One of the counterclaims is a claim under 29 U.S.C. § 1132(a)(3) that seeks to recover from the Children's Plaintiffs those payments purportedly made in contravention of the plan terms. Count Two is a claim under that same statutory provision for equitable relief "to determine the rights of Counterclaim Defendants with respect to the enforcement of the Plan." (Doc. # 7 ¶ 43.)

American Benefits also filed an Answer in which the company asserts cross-claims

against Dickey.  (Doc. # 10.)  Count One asks for a declaratory judgment that, pursuant to an Administration Agreement, Dickey is required to defendant, indemnify, and hold harmless American Benefits.  Count Two is a breach of contract claim based upon the Administration Agreement and Dickey's alleged failure to honor that agreement.  Count Three is a claim for attorney's fees incurred by American Benefits.

Robert Doe and John Doe have filed a Reply to the counterclaim and in turn assert their own counterclaims against Dickey, the Plan, and American Benefits.  (Doc. # 11.)  The Does assert that the Plan, through American Benefits, has wrongly denied over $684,623.96 in valid medical claims.  The Does assert one claim under 29 U.S.C. § 1132(a)(1)(B) for recovery of these medical claims (Claim One), two claims under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty (Claims Two and Three), one claim for equitable estoppel (Claim Four), and three claims for failure to provide requested information under 29 U.S.C. § 1132(c) and for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Claims Five, Six, and Seven).

Dickey and the Plan have together filed a the motion to dismiss the Doe claims.  (Doc. # 15.)  After an extended period of briefing, the motion is ripe for disposition.

## II.  Discussion

### A.  Standard Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which this Court may grant relief.  Under the United States Supreme Court's articulation of the analytic standard involved in applying this rule, this Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and

determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp . v. Twombly*, 550 U.S. 554, 570 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Recently, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court discussed the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1949-50.

**B. Analysis**

Dickey and the Plan move for dismissal of all seven counterclaims asserted against them. This Court shall address each argument for dismissal by following the groupings employed in the motion to dismiss and related briefing.

### 1. Claim One

In their first counterclaim, the Does assert a claim under 29 U.S.C. § 1132(a)(1)(B) for the wrongful denial of benefits. Dickey and the Plan move to dismiss Claim One on two grounds. First, they argue that dismissal of that component of the claim that seeks payment for treatment John Doe received separate from the alleged Phase II clinical trial is warranted as a result of the Does' purported failure to exhaust their administrative remedies. Second, Dickey and Plan contend that dismissal is appropriate of that component of the claim that seeks payment for treatment made as part of the alleged Phase II clinical trial as a result of exclusionary language in the plan. Neither ground for dismissal proves successful here.

It is well settled that "[b]eneficiaries seeking to recover improperly denied benefits must first exhaust the administrative remedies available to them, unless doing so would be futile or would furnish inadequate relief." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 719 (6th Cir. 2005). The Does have failed to exhaust, Dickey and the Plan contend, because there has never been a final determination of the Does' claims. Dickey and the Plan contend that this means that "as to non-Phase II clinical treatment claims, no administrative record exists for this Court to consider." (Doc. # 15, at 10.) After making this argument, Dickey and the Plan subsequently joined the other parties to this litigation in a unanimous motion for leave to file the

approximately 5,670-page administrative record under seal. (Doc. # 52.) The Court granted

this joint motion (Doc. # 53), and the six-volume administrative record was filed in July 2009.

(Docs. # 54, 55.)

The Does argue in their memorandum in opposition, as they asserted in their

counterclaim pleading, that they did exhaust the available administrative-review procedures or

that they should be deemed to have exhausted as a result of Defendants' collective conduct. This

Court agrees. As noted in the Background section above, there has never been a final

determination of the Does' claims, despite multiple reviews. Dickey and the Plan cannot

indefinitely insulate themselves from federal litigation by failing to meet their obligations so as

to frustrate the Does having meaningful access to the claim determination process. The extended

and unexplained inaction tainting these proceedings is a *de facto* denial excusing a failure to

exhaust. *Cf. Riggs v. A.J. Ballard Tire & Oil Co., Inc. Pension Plan & Trust*, 979 F.2d 848,

1992 WL 345584, at *2 (4th Cir. 1992) (unpublished table decision) (citing failure of company

to take any action on claim as contributing ground for excusing failure to exhaust administrative

remedies). Accordingly, under the circumstances present here and given Defendants' conduct,

this Court in its discretion deems any failure to exhaust excusable and rejects such failure as

persuasive grounds for partial dismissal.

This leaves for disposition the argument that partial dismissal is warranted based on

exclusionary language in the plan. Dickey and the Plan assert that the plan provides that

experimental or investigational treatment is excluded *per se* from coverage and defines treatment

as "experimental" and "investigational" when reliable evidence shows that the drug or treatment

employed is the subject of an on-going Phase I or Phase II clinical trial. Dickey and the Plan

assert that just such a scenario exists here.

The Does disagree and argue that only review of the administrative record can answer the question of whether the treatment John Doe received falls within the exclusionary language of the plan. Weighing in as essentially amicus curiae, the Children's Plaintiffs also take issue with the argument for dismissal. The Children's Plaintiffs posit that "this Court can only determine whether the treatment at issue was 'experimental or investigational' by reviewing the administrative record and evaluating the process under which the Plan Administrator decided to deny benefits for the successful treatment undergone by John Doe." (Doc. # 38, at 2.) Moreover, the Children's Plaintiffs disagree with the contention that the plan language involved forecloses the benefits sought here.

This Court recognizes that the determination of whether the requisite reliable evidence exists to show that the drug or treatment employed is the subject of an on-going Phase II clinical trial (as opposed to a clinical study outside such classification) is not properly resolved by the pleadings presented here. The Court necessarily accepts all factual conclusions presented by the pleadings as true, but not the conclusions contained within those pleadings. Thus, regardless of the scope of the potentially exclusionary language–an issue that the Court need not and does not resolve here–there exists a question as to whether facts exist to invoke or render inapplicable such language. As the briefing opposing dismissal well documents, the pleadings suggest such a question. The administrative record will provide the answer. Accordingly, the Court also finds this last ground for dismissal of Claim One not well taken.

### 2. Claims Two, Three, & Four

In their second counterclaim, the Does assert a breach of fiduciary duty claim under 29

U.S.C. § 1132(a)(3). They allege that the Plan, through American Benefits, impermissibly delegated its fiduciary duty to the outside entities United Re AG and Medical Mutual of Ohio. The Does also assert a § 1132(a)(3) breach of fiduciary duty claim in their third counterclaim based on the Plan's pre-certification and pre-authorization of treatment John Doe received, as well as the initial payment of claims for treatment that was later revoked. The Does plead that "[t]hese actions served as representations to [Robert Doe] that the Plan was covering John Doe's treatments" and that the "representations constituted a breach of fiduciary duty owed to [Robert Doe] and John Doe–if in fact the treatments were not covered under the terms of the plan." (Doc. # 11, at 8 ¶¶ 12-13.) In their fourth counterclaim, the Does assert an equitable estoppel claim based on the same alleged conduct involved in Count Three and plead that "[t]hese representations of coverage were made . . . with the knowledge that these representations would be relied upon." (*Id.* ¶ 16.)

Dickey and the Plan move for dismissal of all three claims on the grounds that they impermissibly seek the same recovery sought in the Count One wrongful denial of benefits claim under § 1132(a)(1)(B).[3] Support for this contention exists in the prayer in which the Does indicate that they seek in relevant part:

1.  Recovery of wrongfully denied employer-sponsored health benefits believed to amount to $684,623.96 under 29 U.S.C. § 1132(a)(1)(B);

2.  An equitable order requiring the Defendants to pay all outstanding charges for the medical treatments of John Doe; [and]

3.  An equitable order of restitution requiring the defendants to reimburse [Robert

_____

[3] Dickey and the Plan actually move for dismissal of the Does' Count Four equitable estoppel claim by characterizing the claim as a breach of fiduciary duty claim. (Doc. # 15, at 13.) Regardless of the label involved, the analysis remains the same.

Doe] for the amount of all outstanding charges for the medical treatment of John
Doe[.]

(*Id.* at 16.)  Thus, the relief sought for Claims Two, Three, and Four are ultimately the same:
payment of an amount covering John Doe's treatment, which is the same amount associated with
the denial of benefits.  None of the counts pursue damages other than those associated with the
denial of benefits.

This is an important fact because the United States Supreme Court has described the
"catchall" provision of the statutory scheme embodied in § 1132(a)(3) as providing a remedy for
individuals who would otherwise have no remedy at all.  *Varity Corp. v. Howe*, 516 U.S. 489,
515 (1996).  Thus, as the First Circuit has noted, "federal courts have uniformly concluded that,
if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate
remedy under the plan which bars a further remedy under Section a(3)."  *LaRocca v. Borden,
Inc.*, 276 F.3d 22, 28-29 (1st Cir. 2002) (collecting cases).  Such a conclusion proves dispositive
here given that § 1132(a)(1)(B) already potentially provides an adequate remedy for the Does,
rendering their alternate claims simply and impermissibly duplicative.  *See Wilkins v. Baptist
Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) ("Because § 1132(a)(1)(B) provides a
remedy for [a plaintiff's] alleged injury that allows him to bring a lawsuit to challenge the Plan
Administrator's denial of benefits to which he believes he is entitled, he does not have a right to
a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3).").  The Sixth Circuit has
applied this rationale to claims beyond § 1132(a)(3) breach of fiduciary duty claims.  *See Lerner
v. Elec. Data Sys. Corp.*, No. 07-1730, 2009 WL 579345, at *4 (6th Cir. Mar. 9, 2009) (applying
rationale to claims for breach of contract, fraudulent misrepresentation, and innocent
misrepresentation).

The Sixth Circuit has also explained that a *Varity* fact pattern is not the only narrow exception:

> Although the *Varity* Court, in allowing the § 502(a)(3) claim, emphasized that the plaintiff could not have brought a § 502(a)(1)(B) claim, the Sixth Circuit sometimes allows a plaintiff to bring claims under both §§ 502(a)(3) and 502(a)(1)(B). *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005). The *Hill* Court allowed a plaintiff to bring claims under both sections when § 502(a)(1)(B) would not provide the complete relief the plaintiff sought. There the plaintiff complained of an "improper methodology for handling all of the . . . claims." *Hill*, 409 F.3d at 718. The Court held that the plaintiff had pleaded sufficient facts to support a § 502(a)(1)(B) for unpaid benefits.
>
> But the plaintiff in *Hill* also brought a claim for injunctive relief under § 502(a)(3) to require the defendant "to alter the manner in which it administers all of the . . . claims." *Id.* The Court noted that this § 502(a)(3) claim was for "plan-wide injunctive relief, not [for] individual-benefit payments." *Id.* Although the plaintiff had the ability to seek damages for improperly denied benefits, the Court allowed the plaintiff to proceed on both claims because "[o]nly injunctive relief of the type available under § [502(a)(3) ] will provide the complete relief sought." *Id.*

*Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 491-92 (6th Cir. 2009). Thus, there are "some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(B) and § 1132(a)(3)." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007).

Unlike in *Varity*, the pleadings do not indicate that this is a case in which individuals were misled so that they lost potential benefits and would have been left without a remedy absent equitable relief. *Varity*, 516 U.S. at 491-95. The Does were ultimately denied benefits that they had the opportunity to pursue. Moreover, a benefits award here would provide the Does complete relief and their claims could fairly be characterized as ones for the denial of benefits. Because the simultaneous claims seek only a monetary award for benefits–and not, for example, an injunction altering claim handling methodology as in *Hill*–the Count One § 1132(a)(1)(B)

claim would provide the Does complete relief.  *See Hill*, 409 F.3d at 717-18; *Gore*, 477 F.3d at 841-42.  The Court therefore finds the motion to dismiss well taken in regard to Claims Two, Three, and Four.  Having reached this conclusion, the Court need not and does not address the mooted alternative grounds for dismissal of Count Four presented in the motion to dismiss.

### 3.  Claims Five & Six

In their fifth and sixth counterclaims, the Does assert claims for failure to provide requested information under § 1132(c) (and for breach of fiduciary duty under § 1132(a)(3), another duplicative component of the counterclaims).  The alleged factual basis for Count Five is that counsel for the Does sent a certified letter to American Benefits on July 10, 2008, in which the Does requested various information pursuant to § 1132(c).  Rebecca Roth responded on behalf of American Benefits and purportedly failed to provide some of the materials and answers requested.  Similarly, the alleged factual basis for Count Six arises from an August 27, 2008 letter from counsel for the Does to Roth that identified asserted deficiencies in her prior response and again requested various information.  The Does plead that Roth failed to respond to this second letter.  Both claims seek statutory penalties under § 1132(c) of $110 per day from specified dates.

Dickey and the Plan move for dismissal on multiple grounds, the most obvious of which is that the Does sent their requests to American Benefits, not to Dickey, which means that Dickey as the plan administrator never received the request for information.  The Does argue that "[t]his issue may not be resolved on a motion to dismiss with no factual record."  (Doc. # 30, at 12.)  Correctly conceding that only a plan administrator can be held liable under § 1132(c), they posit that "whether the plan administrator actually received the request for information is a

15

factual question that must be resolved before dismissing the claim" and that "whether the party

that actually received the request for information can charge the administrator with receipt of the

request is also a factual issue that must be resolved before dismissing the claim." (Doc. # 30, at

12-13.) The Does then argue:

> We do not know the exact relationship between [American Benefits] and
> D.W. Dickey & Son's health plan. We do not know how much administrative
> authority, or if all administrative authority, had been granted to [American Benefits]
> either by agreement or through practice. We do not know if [American Benefits] in
> fact forwarded the request for information to the Plan. The Plan may have received
> the requests for information and simply ignored them.

(Doc. # 30, at 13.) None of the Does' varied contentions prove persuasive.

To be considered plausible, Claims Five and Six must be more than merely conceivable.

*Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548; *Tucker*,

2007 WL 3287359, at *2. But the Does' arguments in support of these claims does not draw

upon any factual allegations in the pleadings. Rather, the Does only engage in conjecture

without an apparent factual foundation for positing their "what if" scenarios that could

conceivably attach liability to Dickey. Their pleadings do not present facts sufficient "to raise a

right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also*

*Sensations, Inc.*, 526 F.3d at 295.

The Does essentially argue that precedent supports that their speculation may overcome a

motion to dismiss. They direct this Court to *Minadeo v. ICI Paints*, 398 F.3d 751 (6th Cir.

2005), in which the Sixth Circuit addressed a set of facts in which it was unclear whether a

plaintiff had made an information request to the plan administrator. *Id.* at 759. Recognizing that

the issue was whether the plaintiff had directed her request to the wrong party, the court of

appeals explained that the record insufficiently explained the relationship between the defendant parties involved. *Id.* In remanding for further factual development of the relationship between the defendants, it is significant that the Sixth Circuit specifically stated that "[w]e note . . . that the available related information suggests both that Glidden participated in the administration of benefits under the pension plan and that the Pension Committee may be so closely related to Glidden that a request to Glidden should have been construed as one to the Pension Committee." *Id.*

*Minadeo* is distinguishable. Unlike in that case, there are no facts before this Court suggesting that the relationship between Dickey and American Benefits is so closely related or intertwined so that service of a request on the latter should be construed as a request upon the former. The Does' own briefing underscores this conclusion; they state that "[a]ll that is known and alleged at this point is that the plan participant . . . specifically requested plan information and benefit payment information from American Benefits Management (ABM) on several occasions during the summer of 2008." (Doc. # 30, at 13.) Absent some factual predicate to support the Does' speculation, the pleading thus presents more of a request for a fishing expedition than plausible claims in the two claims under consideration. Accordingly, because "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 129 S.Ct. at 1950, this Court must find the motion to dismiss well taken in regard to Claims Five and Six. Having reached this conclusion on the narrow grounds discussed, the Court need not and does not address the remaining arguments for dismissal of these claims presented in the motion to dismiss.

### 4. Count Seven

In their seventh counterclaim, the Does assert a claim for failure to provide requested information under §1132(c) (and for breach of fiduciary duty under § 1132(a)(3), another duplicative component of the counterclaims). The factual foundation of this claim is the allegation that Dickey and the Plan failed to provide sufficient notice of and explanations for the denial of each medical claim at issue as required by 29 C.F.R. § 2560.503-1(g). Dickey and the Plan assert that "Sixth Circuit precedent demands dismissal of Claim Seven" because 29 C.F.R. § 2560.503-1 is a regulation that implements 29 U.S.C. § 1133 and § 1132 damages are not available for violations of regulations implementing § 1133. (Doc. # 15, at 16.)

The asserted precedent upon which Dickey and the Plan rely is *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726 (6th Cir. 2008). In that case, the Sixth Circuit reviewed a grant of summary judgment against a plaintiff who had brought a claim based on an asserted failure to provide him with documents related to a group health plan. *Id.* at 727. The court of appeals affirmed, first holding that because the documents that plaintiff sought failed to fall within the categories of documents set forth in 29 U.S.C. § 1024(b)(4), then statutory damages under § 1132(c) for the failure to turn over these documents were unavailable. *Id.* at 733-35. Notably, addressing an alternate ground for liability that the plaintiff had raised, the court of appeals also held that § 1132(c), which targets only plan administrators, could not impose damages on the plan administrator in that case "because the regulatory provision on which [the plaintiff] relie[d], 29 C.F.R. § 2560.503-1(h)(2)(iii), clearly imposes requirements on the plan, not the plan administrator." *Id.* at 736.

Although opposing dismissal, the Does states in their briefing that *Jordan* held "that § 1132(c) damages are not available to participants who have requested information regarding the

denial of claims." (Doc. # 30, at 14.) The Does then state that they "wish to maintain the claim under a good faith argument for an extension or changing of the case law as it currently exists." (*Id.* at 14-15.)

What complicates disposition of Count Seven is that both parties' characterization of *Jordan*, an unpublished case that the Does ask this Court simply not to follow, *might* be overly broad. The Sixth Circuit's decision in *Jordan* that § 1132(c) damages were unavailable for a violation of an implementing regulation turned on the fact that the specific regulation involved in that case, 29 C.F.R.§ 2560.503-1(h)(2)(iii), "clearly impose[d] requirements on the plan, not the plan administrator," and the *Jordan* plaintiff had sued the plan administrator. *Jordan*, 312 F. App'x at 736. In reaching this conclusion, the court of appeals explicitly once again declined to adopt a broader rationale that would have foreclosed § 1132(c) damages against plan administrators for breaches of all implementing regulations. *See Jordan*, 312 F. App'x at 736. This is notable because the implementing regulation at issue in the instant case is 29 C.F.R. § 2560.503-1(g), which speaks in terms of what "the plan administrator shall provide." 29 C.F.R. § 2560.503-1(g)(1).

The Sixth Circuit referenced § 2560.503-1(g) in *Jordan*, characterizing "the implementing regulation" as "involv[ing] requirements for what *benefit plans* must provide." *Jordan*, 312 F. App'x at 735 (emphasis added). But this reference was to that version of § 2560.503-1(g) at issue in a specific case, *Wilczynski v. Lumbermens Mutual Casualty Co.*, 93 F.3d 397 (7th Cir. 1996). *Jordan*, 312 F. App'x at 735 (specifically referencing 1977 version of § 2560.503-1(g)). The dated reference is potentially important because after *Wilczynski* but before *Jordan*, § 2560.503-1(g) was revised.

The version of § 2560.503-1(g) at issue in *Wilczynski* provided:

> Every plan shall establish and maintain a procedure by which a claimant . . . has a reasonable opportunity to appeal a denied claim . . . and under which a full and fair review of the claim and its denial may be obtained.  Every such procedure shall include ... provisions that a claimant or his duly authorized representative may: . . . (ii) Review pertinent documents . . . .

*Wilczynski*, 93 F.3d  at 406 (quoting former 29 C.F/R. 2560.503-1(g)).  Section 2560.503-1 was revised in November 2000, however, with former (g) moving to what is now the substantively similar (h).  The effective date of the revised regulation was January 20, 2001, *see* 65 F.R. 70246-01, 2000 WL 1723740, and from this point § 2560.503-1(g)(1) has provided that "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination."  The remainder of § 2560.503-1(g)(1) then proceeds to describe the requisite contents of the notification.  29 C.F.R. § 2560.503-1(g)(1)(i)-(vi).

The Sixth Circuit's characterization in *Jordan* of former § 2560.503-1(g) as involving requirements for what *benefit plans* must provide therefore does not necessarily carry over to the current version of § 2560.503-1(g), which targets a different (delegated) obligation of the *plan administrator*.  This in turn potentially renders the court of appeals' statement that "Section 2560.503-1 is an ERISA regulation that implements 29 U.S.C. § 1133" of questionable value.  *Jordan*, 312 F. App'x at 735.  The statement is perhaps most appropriately regarded as dicta.

This Court hesitantly uses the word dicta, but recognizes a potential need for such qualification because only one federal regulation provision was actually at issue in *Jordan*, § 2560.503-1(h)(2)(iii), a provision that imposes obligations on employee benefit plans.  *Jordan*, 312 F. App'x at 736.  The Sixth Circuit's dated reference to § 2560.503-1(g) as involving

"requirements for what benefit plans must provide" (when § 2560.503-1(g) actually now speaks in terms of what "the plan administrator shall provide") is therefore not essential to disposition of the dispute on appeal. *Jordan*, 312 F. App'x at 735. Similarly, the broadest implications of the court of appeals' statement that "Section 2560.503-1 is an ERISA regulation that implements 29 U.S.C. § 1133" go beyond the scope of the narrow issue that was before the appellate court. *Id.*

Although the court of appeals' last statement is correct, it is also *potentially* incomplete. *Jordan* did not discuss the nuances of the current version of § 2560.503-1. The Sixth Circuit has arguably left the door open for a distinction between the type of regulations and the availability of statutory penalties related to varied regulations. The court of appeals expressly noted in *Jordan* that the facts of that case were more similar to *Wilczynski*, a case involving a former regulation that imposed duties only on benefits plans, than they were to *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618 (7th Cir. 1987), a case involving a regulation that Sixth Circuit recognized another court had described as "phrased in terms that imposed duties on *plan administrators.*" *Jordan*, 312 F. App'x at 735 (emphasis added). It is unclear whether the Sixth Circuit was drawing a substantive distinction between such regulations that would inform whether § 1132(c) penalties would apply to violations of regulations targeting plan administrators. The *Jordan* panel's blanket characterization of § 2560.503-1 as implementing § 1133 may have been an expression of exactly what the Sixth Circuit intended, given that § 1133 imposes a duty on a benefit plan to provide notice of the denial of benefits with the reasons for such a decision. The premise would be that § 2560.503-1(g) still merely implements § 1133, although it does so by curiously imposing a plan duty on the plan administrator.

Complicating this analysis is *VanderKlok v. Provident Life and Accident Insurance Co., Inc.*, 956 F.2d 610 (6th Cir. 1992). In that case, the Sixth Circuit found that an insurer had violated § 1133 by failing to comply with a regulation. The regulation involved, 29 C.F.R. § 2560.503-1(f), imposed duties on a plan administrator and, under specified circumstances, an "insurance company, insurance service, or other similar organization." *Id.* at 615. Explaining that the regulation applied to the insurer, the court of appeals concluded that the insurer had violated a duty under § 1133. *Id.* at 615-16. The appellate court then went on to hold that the insurer was not liable under § 1132(c), however, because the statute only permits penalties against a plan administrator. Id. at 618. Thus, *VanderKlok* teaches that even though a regulation may apply to an entity, violation of that regulation does not invariably lead to statutory penalties reserved for plan administrators. This focus on status suggests by implication that Dickey could be subject to statutory damages related to violation of a regulation.

In light of the foregoing, the parties' agreement in the instant case as to the holding of *Jordan* is not necessarily dispositive. This is not to say that the parties have failed to suggest grounds for dismissal of Count Seven, even if the case upon which they focus does not prove dispositive. At its core, the argument is that § 1132(c) does not provide for penalties arising from the violation of § 2560.503-1(g). This Court agrees with such a proposition. Section 1132(c) provides for damages against plan administrators, not against plans. The statute therefore does not provide for a claim against the Plan here, despite the fact that the Does' counterclaim indicated they were asserting the claims against "All Defendants." (Doc. # 11, at 13.) The statute does potentially reach Dickey as the plan administrator, although not under the circumstances presented here. This is because the reach of § 1132(c) is not so expansive as to

include regulations such as § 2560.503-1(g).

As noted, the Sixth Circuit recognized but did not adopt in *Jordan* a line of cases "reject[ing] the contention that the damages authorized against plan administrators in § 1132(c) includes damages for breaches of regulations." *Jordan*, 312 F. App'x at 736 (citing *Groves v. Modified Retirement Plan*, 803 F.2d 109 (3d Cir. 1986)). The court of appeals explained its handling of the *Groves* analysis as follows:

> The Third Circuit relied on the penal as opposed to remedial nature of § 1132(c)(1)(B). [*Groves*,] 803 F.2d at 117. The court went on to explain that § 1132(c)(1)(B) authorizes damages for breaches of duties imposed "by this subchapter," and that the "by this subchapter" languages precludes recovery for violations of implementing regulations. *Id.* at 117-18. . . .
>
> This court cited *Groves* with approval in *Stuhlreyer,* though its approval did not extend to the "by this subchapter" analysis, but rather was limited to the court's distinction between the plan and the plan administrator. In this case, there is no need to apply Groves's broader "by this subchapter" holding because the regulatory provision upon which Jordan relies, 29 C.F.R. § 2560.503-1(h)(2)(iii), clearly imposes requirements on the plan, not the plan administrator.

*Jordan*, 312 F. App'x at 736. *Groves* dealt with a prior version of § 2560.503-1, but this fact does not affect the statute-centric "by this subchapter" rationale.

Other courts have held that a failure to comply with implementing regulations cannot form the basis for a penalty under § 1132(c). *See Galanis v. N.C. Caro, M.D., S.C. Defined Benefit Plan*, 536 F. Supp. 2d 933, 954 (E.D. Wis. 2008) ("[A] violation of 29 C.F.R. § 2560.503-1(g) cannot lead to sanctions under § 1132. The Seventh Circuit has held that 'the sanctions imposed by [§ 1132(c)] may not be imposed for the violation of an agency regulation.'" (quoting *Wilczynski*, 93 F.3d at 406)); *Giertz-Richardson v. Hartford Life & Accident Ins. Co.*, No. 8:06-cv-1874-T-24MAP, 2007 WL 1099094, at *2 (M.D. Fla. Apr. 10, 2007) ("Plaintiff

urges the Court to expand the scope of § 1132(c) to include . . . all documents that the Department of Labor's implementing regulations require to be supplied to claimants. The Court . . . is not so inclined as to expand the scope of § 1132(c)."); *Ferree v. Life Ins. Co. of N. Am.*, No. 1:05-cv-2266-WSD, 2006 WL 2025012, at *6 (N.D. Ga. July 17, 2006) ("[T]he Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself."); *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1092 (N.D. Ill. 2005) ("[N]o matter how pointedly 29 C.F.R. [§ ] 2560.503-1 speaks to plan administrator conduct, it cannot form the basis for a statutory penalty under [§ 1132(c)]."); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180SASDFE, 2005 WL 1309056, at *4 (S.D.N.Y. May 31, 2005) ("Given the express wording of section 1132 and the judicial interpretations found in *Groves* and *Wilczynski*, . . . a violation of ERISA's implementing regulations cannot support the imposition of sanctions under section 1132, regardless of whether the implementing regulations place the burden of disclosure on the plan or the plan administrator."). Similar to many of these courts, this Court agrees with the "by this subchapter" reasoning of *Groves*, a rationale upon which the Sixth Circuit has not yet had to opine definitively. Given the arguable lack of clarity as to the scope of *Jordan*, the persuasive analysis of *Groves* presents a cleaner rationale to this Court than mere reliance on *Jordan*.

In summary, *Jordan* either stands for the broad proposition that § 1132(c) damages are not available for violation of *any* part of § 2560.503-1 or for the more narrow proposition that such statutory damages are simply not available for violation of regulations placing burdens *on a benefit plan* as a means of implementing § 1133, such as § 2560.503-1(h). If the parties (including the reluctant Does) have correctly characterized *Jordan*, then that appellate decision,

24

although unpublished, nonetheless presents Sixth Circuit reasoning that forecloses the Does'

seventh counterclaim.  If the parties have only partially interpreted *Jordan* correctly–perhaps

broadening its scope to treat dicta as part of that case's holding or reading more into the case

than was intended–the reach of § 1132(c) nonetheless does not extend to violations of §

2560.503-1(g) based on the persuasive rationale of *Groves*.

Having recognized alternative grounds supporting today's decision, the Court concludes

that the end result is the same regardless of whether *Jordan* proves dispositive in light of the

rationale of *Groves*: the Does have failed to present a plausible claim under § 1132(c) predicated

on the alleged violation of § 2560.503-1(g).  Dickey and the Plan are therefore entitled to

dismissal of the seventh counterclaim.

### III.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

motion to dismiss filed by Dickey and the Plan.  (Doc. # 15.)  The Court dismisses Claims Two,

Three, Four, Five, Six, and Seven against Dickey and the Plan.  Claim One remains pending

against Dickey and the Plan, and all claims remain pending against American Benefits, which

was not a party to the motion to dismiss addressed herein.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE