UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONWIDE CHILDREN'S
HOSPITAL, INC., et al.,

    Plaintiffs,

v.

D.W. DICKEY & SON, INC.
EMPLOYEE HEALTH AND WELFARE
PLAN, et al.,

    Defendants.

Case No. 2:08-cv-1140
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

**OPINION AND ORDER**

This matter is before the Court for consideration of a motion for judgment on the pleadings (Doc. # 28) filed by The Masters Agency, Inc. d/b/a American Benefits Management, a memorandum in opposition (Doc. # 39) filed by Nationwide Children's Hospital, Inc., Children's Radiological Institute, Inc., Children's Anesthesia Associates, Inc., Children's Surgical Associates Corp., and Pediatric Academic Association, Inc., and a reply memorandum (Doc. # 45) filed by The Masters Agency, Inc. d/b/a American Benefits Management. For the reasons that follow, the Court **DENIES** the motion for judgment on the pleadings. (Doc. # 28.)

**I. Background**

Plaintiffs Nationwide Children's Hospital, Inc., Children's Radiological Institute, Inc., Children's Anesthesia Associates, Inc., Children's Surgical Associates Corp., and Pediatric Academic Association, Inc. ("Children's Plaintiffs") are all not-for-profit corporations that are assignees of rights belonging to participants and beneficiaries in Defendant D.W. Dickey & Son, Inc. Employee Health and Welfare Plan ("the Plan"). The Plan is a self-insured group health and

1

disability plan that covers participants and their beneficiaries under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Defendant D.W. Dickey & Son, Inc. ("Dickey") is the plan sponsor and administrator, while Defendant The Masters Agency, Inc., which does business as American Benefits Management ("American Benefits"), is the third-party administrator for the plan. A non-party, United Re AG, is a reinsurer of the plan and is responsible for amounts exceeding the first $90,000.00 of claims.

According to the Children's Plaintiffs' Complaint, a Dickey employee identified as Robert Doe is a plan participant.[1] Robert Doe's son, John Doe, is a beneficiary of the Plan. In fall 2006, doctors discovered that John Doe had a pelvic tumor. John Doe obtained treatment at Children's Hospital from a number of oncologists, including Dr. Nick Yeager. Yeager diagnosed John Doe with Ewing's Sarcoma, an aggressive form of bone cancer that has a 20% survival rate in patients who undergo traditional treatment approaches.

John Doe was enrolled in a Children's Oncology Group ("COG") study initiated by The Hospital for Sick Children in Toronto, Canada. Patients in this study obtained standard chemotherapy treatment as well as two additional drugs, vinblastine and celecoxib, the latter of which is sold commercially as Celebrex. John Doe received such treatment from November 15, 2006 through July 10, 2007. According to the Children's Plaintiffs' pleading, John Doe received pre-certification and authorization for all dates of services for treatment while enrolled in the study, and Defendants approved substantially all of the claims John Doe submitted from late 2006 through the first half of 2007.

---

[1] The Court notes that Robert Doe has used his actual name in his filings. Because identification of the father implicitly reveals the identity of the minor son in this case, the Court will continue to use "Robert Doe" here.

Sometime in mid-2007, however, Defendants asserted that they became aware that John Doe was enrolled in a COG study. Thereafter, on September 5, 2007, American Benefits referred the claim for outside review. Strategic Health Development Corporation facilitated the review by referring the claim to an unidentified physician who opined, according to the Complaint, that although the use of vinblastine and Celebrex may be considered experimental, "the other [standard chemotherapy] agents are not experimental" and "the only charges which should be denied, if any, are those for vinblastine and the Celebrex."[2] (Doc. # 2 ¶ 41.)

In early November 2007, American Benefits submitted the matter to United re AG, which in turn issued a letter to American Benefits on November 6, 2007, that denied coverage. American Benefits then notified the Children's Plaintiffs on November 14, 2007, that the already approved and paid claims were not payable under the plan's "experimental and/or investigational" exclusion. The letter also indicated that the charges for standard of care and complications were not covered. Various repayment was initially sought: $442,034.03 from Children's Hospital, $19,796.66 from Pediatric Academic Association, $888.54 from Children's Radiological Institute, $1,313.00 from Children's Anesthesia Associates, and $59.49 from Children's Surgical Associates. In a subsequent amendment, American Benefits then sought repayment from Children's Hospital in the amount of $450,734.91.

The Children's Plaintiffs appealed the denial on January 3, 2008. Dr. Yeager submitted a letter as part of this appeal in which he stated that the drugs and treatment involved were neither

---

[2] The Complaint states that the unidentified reviewing physician offered his or her opinion on August 22, 2007. (Doc. # 2 ¶ 41.) Given that the pleading also states that the claim was not referred for outside review until September 5, 2007, see Doc. # 2 ¶ 38, the Court assumes that the August 22, 2007 date is an error.

3

investigational nor experimental, but are instead the standard of care for metastatic Ewing's Sarcoma. Shelly Spieth of American benefits denied the appeal in a January 17, 2008 letter. A deadline of May 19, 2008, was established for a voluntary second level of appeal.

The Children's Plaintiffs timely appealed, and American Benefits referred the appeal for outside review. H.H.C. Group Health Insurance Consultants ("H.H.C. Group") facilitated the review by referring the appeal to Dr. Richard Bender, a Board Certified Internal Medicine Oncologist. Dr. Bender opined that the decision to treat John Doe in a clinical trial was "well within the standard of medical care" and that it had been his "considerable experience that these claims are always covered by carriers unless specifically excluded by policy language or benefits." (Doc. # 2 ¶ 59.) The doctor also stated:

> While one might choose to take exception to the addition of the costs of Celebrex and vinblastine (which are nominal in this case), the fact is that the multiagent chemotherapy program . . . is the standard medical care for Ewings sarcoma. As such, the therapy used for this young boy is neither "experimental" nor "investigational" for this pate[i]ent at this time. . . . This reviewer does NOT believe that American benefits' claim that the addition of Celebrex and vinblastine to the standard of care chemotherapy program transforms this program into 'I/E' treatment. Based upon all of the foregoing, the only possible charges that theoretically might be denied would be the cost of the oral Celebrex and the cost of the vinblastine. All of the other charges should be considered part of the standard of care and, therefore, should be paid.

(Doc. # 2 ¶ 60 (emphasis deleted).) American Benefits then asked H.H.C. Group to facilitate an additional review.

Dr. Della Livesay Howell, a pediatric hematologist-oncologist, conducted this third review. She opined:

> I agree with the recommendation of Dr. Bender. The treatment is not experimental or investigational and is considered a "standard of care" therapy for this patient. The carrier has mistakenly stated that because the patient was in a clinical trial that his treatment was experimental in nature. The previous denial for care because it was

4

considered experimental should be overturned and the treatment authorized as medically necessary within the accepted practice for this type of disease.

(Doc. # 2 ¶ 63 (emphasis deleted).) Dr. Howell also stated:

> In this patient's case, this treatment plan, while part of a pilot study, is accepted as a medical practice properly within the range of appropriate care by pediatric oncologists across the country. The medications themselves have been accepted by the FDA for use as anti-angiogenesis agents, and they have already been shown to have some efficacy in similar tumors.
>
> The addition of celecoxib and vinblastine to this already accepted standard of care therapy for localized Ewing's sarcoma does not qualify as investigational or experimental therapy for this patient's disease, metastatic Ewing's sarcoma, a cancer that is much more difficult to treat. Therefore, the entire treatment of this patient should be covered under the policy plan.

(Doc. # 2 ¶ 64 (emphasis deleted).) Dr. Lester Leslie Sacks, the medical director for H.H.C. Group, reviewed Dr. Howell's conclusions, as well as Dr. Bender's conclusions, and "found [them] to be appropriate given the clinical information available for review." (Doc. # 2 ¶ 65.)

American Benefits forwarded the various doctors' reviews to United Re AG on June 20, 2008. United Re AG subsequently indicated in a July 1, 2008 letter to American Benefits that it was affirming its decision to deny benefits. An American Benefits representative consequently stated in a July 7, 2008 letter to the Children's Plaintiffs the following:

> As you are a ware [*sic*], the appeal came back in your favor. As this claim was initially denied by the stop loss carrier [United Re AG], we sent the medical review to them for reconsideration. They have subsequently re-denied the appeal based on the same experimental/investigational language.
>
> On Thursday last week, I sent the final medical review and the stop loss carrier's denial to the peer review company for an additional review on a high priority basis.
>
> Please be aware that D.W. Dickey is not authorizing any additional money to be paid on John's claims at this time. They are waiting for the final determination from the stop loss carrier.

(Doc. # 2 ¶ 70 (emphasis deleted).) Despite this communication, however, it appears that there

5

has been no ultimate decision on the Children's Plaintiffs' appeal.

It is unclear precisely what happened next. According to the Complaint, Defendants sent the claim to H.H.C. Group for a fifth review, but the latter company refused to facilitate such a review and stood by its opinion that the claim should be paid. Defendants deny these allegations. A period of silence followed in which American Benefits apparently declined to respond to the Children's Plaintiffs' inquiries regarding the status of the appeal.

What is more clear is that American Benefits responded after four inquiries from the Children's Plaintiffs that the appeal had been sent to Medical Mutual of Ohio, which coordinates medical providers under the plan. Despite this September 25, 2008 transfer for review, Defendants had not adjudicated the claim by the time the Children's Plaintiffs filed their Complaint on December 2, 2008. The Complaint asserts an ERISA claim for derivative benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), against the Plan, Dickey, and American Benefits.

On February 6, 2009, Dickey and the Plan filed an Answer in which they asserted counterclaims against the Children's Plaintiffs, Robert Doe, and John Doe. (Doc. # 7.) Count One of the counterclaims is a claim under 29 U.S.C. § 1132(a)(3) that seeks to recover from the Children's Plaintiffs those payments purportedly made in contravention of the plan terms. Count Two is a claim under that same statutory provision for equitable relief "to determine the rights of Counterclaim Defendants with respect to the enforcement of the Plan." (Doc. # 7 ¶ 43.)

American Benefits also filed an Answer in which the company asserts crossclaims against Dickey. (Doc. # 10.) Count One asks for a declaratory judgment that, pursuant to an Administration Agreement, Dickey is required to defend, indemnify, and hold harmless

6

American Benefits.  Count Two is a breach of contract claim based upon the Administration Agreement and Dickey's alleged failure to honor that agreement.  Count Three is a claim for attorney's fees incurred by American Benefits.

Robert Doe and John Doe have filed a Reply to the counterclaim and in turn assert their own counterclaims against Dickey, the Plan, and American Benefits.  (Doc. # 11.)  The Does assert that the Plan, through American Benefits, has wrongly denied over $684,623.96 in valid medical claims.  The Does assert one claim under 29 U.S.C. § 1132(a)(1)(B) for recovery of these medical claims (Claim One), two claims under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty (Claims Two and Three), one claim for equitable estoppel (Claim Four), and three claims for failure to provide requested information under 29 U.S.C. § 1132(c) and for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Claims Five, Six, and Seven).

Finally, Dickey and the Plan have recently asserted crossclaims against American Benefits for breach of contract in handling claims (Count One), gross negligence in handling claims (Count Two), negligence in handling claims (Count Three), negligent insurance advice (Count Four), breach of contract in rendering insurance advice (Count Five), and breach of contract for failure to cooperate for rejecting an offer of defense and to provide an administrative record promptly (Count Six).  (Doc. # 62.)  That same pleading also contained a third-party complaint component in which Dickey and the Plan assert claims against United Re AG for breach of contract and for indemnification.

American Benefits has filed a motion for judgment on the pleadings on the Childrens' Plaintiffs' § 1132(a)(1)(B) claim.  (Doc. # 28.)  After an extended period of briefing, the motion is ripe for disposition.  This last statement warrants comment in light of prior actions in this case.

In two previous decisions (Docs. # 60, 61), this Court denied American Benefits' motions for judgment on the pleadings on its crossclaims (Doc. # 25) and on the Doe counterclaims (Doc. # 22). Both motions were premature because the relevant pleading had not yet closed. *See* Doc. # 60, at 12; Doc. # 61, at 4. Here, however, the pleading relevant to the Children's Plaintiffs' claims have closed. Accordingly, this Court can properly proceed to address American Benefits' remaining motion for judgment on the pleadings. (Doc. # 28.)

## II. Discussion

### A. Standard Involved

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) necessitates analysis employing the same standard applicable to a Rule 12(b)(6) motion. *Streater v. Cox*, 336 F. App'x 470, 474 (6th Cir. 2009); *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). Thus, stated generally, "[d]ismissal on a Rule 12(c) motion is appropriate when the factual allegations contained in the complaint, accepted as true, do not show that the pleader is entitled to relief." *Hill v. Mr. Money Finance Co. & First Citizens Banc Corp.*, 309 F. App'x 950, 955 (6th Cir. 2009).

Under the United States Supreme Court's articulation of the analytic standard involved in applying Rule 12(b)(6), this Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp . v. Twombly*, 550 U.S. 554, 570 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litig.*, No. 06-826,

2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Tucker v. Middleburg-Legacy Place, LLC*, No. 1:07CV2015, 2007 WL 3287359, at *2 (N.D. Ohio Nov. 5, 2007). Thus, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Recently, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the United States Supreme Court discussed the plausibility standard articulated in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Id.* at 1949-50.

**B. Analysis**

American Benefits first argues that it cannot be liable under 29 U.S.C. § 1132(a)(1)(B) for the wrongful denial of benefits because it is a third-party administrator. To support this

9

contention, American Benefits directs this Court to § 1132(d)(2), which provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2).

As a third-party claims administrator, American Benefits next argues, it is not a fiduciary and therefore cannot be a defendant in a § 1132(a)(1) context. The company asserts that the pleadings establish that its role "was to process claims in accordance with the terms of the Plan" and that it "was an agent of Dickey; and Dickey, as Plan Administrator, maintained discretionary authority over claims determinations." (Doc. # 28, at 8.)

In response to American Benefits' first argument, the Children's Plaintiffs counter that § 1132(d)(2) does not provide that money judgments can be rendered against only a plan. Rather, they assert, this statutory provision simply provides that a money judgment entered against a plan is only enforceable against that plan. The Children's Plaintiffs then point this Court to a litany of courts within the Sixth Circuit that have rejected the interpretation American Benefits advances.

Although recognizing that the issue is not without debate nationwide, this Court agrees with the Children's Plaintiffs that American Benefits misreads § 1132(d)(2) in light of persuasive authority within the Sixth Circuit. *See, e.g., Teel v. Sedgwick Claim Mgmt. Servs., Inc.*, No. 3:07CV-184R, 2007 WL 1231545, at *2 (W.D. Ky. Apr. 25, 2007) (recognizing circuit split of authority but holding that in the Sixth Circuit, § 1132(d)(2) " 'do[es] not lead inexorably to the conclusion that the only proper party defendant to a claim for wrongful denial of benefits

10

is the plan itself' " (quoting *West v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:05CV-486-S, 2006 U.S. Dist. LEXIS 41653, at *5 (W.D. Ky. June 19, 2006))). The Court notes that contrary authority exists in the form of a decision that The Children's Plaintiffs describe as "an outlier that was wrongly decided." (Doc. # 39, at 4.) *See Oberlin v. South Lorain Merchants Association Health & Welfare Benefits Plan & Turst*, No. 3:06CV890, 2006 WL 1805883, at *1 (N.D. Ohio June 29, 2006) (holding that "a third-party administrator is not a proper party to a suit for a money judgment concerning denied benefits"). Given that other cases in other districts have reached a result similar to *Oberlin*, this Court questions the Children's Plaintiffs' dismissive outlier characterization. But there is some doubt as to whether the rationale upon which *Oberlin* rested is correct. *See West*, 2006 WL 4542715, at *3 ("Courts both inside and outside this circuit have read [*Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988),] to place the Sixth Circuit among the jurisdictions which have declined to follow the . . . line of cases limiting § 502(a)(1)(B) to claims against a plan only. The court finds no authority in this circuit which supports the proposition . . . that dismissal is required because the Plan is the only proper party defendant to a claim for wrongful denial of benefits."). This Court finds more persuasive the line of cases that decline to read § 1132(d)(2) to have the effect that American Benefits advances.

Supporting mainly by analogy this conclusion are numerous other cases that, although they may not address explicitly the § 1132(d)(2) issue, conclude that a plan is not the only proper defendant in a suit to recover benefits under § 1132(a)(1)(B). *See Garringer v. Employer Benefits Services of Ohio, Inc.*, No. 3:08-CV-160, 2008 WL 3822311, at *3 (S.D. Ohio Aug. 12, 2008) ("Although the circuits are split on the issue of whether a plan is the only proper defendant

11

in a suit to recover benefits under section 502(a)(1)(B), in the Sixth Circuit, plan administrators may be properly named as parties in an ERISA action."); *Strickrath v. The Hartford Ins. Co.*, No. C2-06-1080, 2008 WL 835686, at * (S.D. Ohio Mar. 28, 2008) ("Although the circuits are split on the issue of whether a plan is the only proper defendant in a suit to recover benefits under § 502(a)(l)(B), in the Sixth Circuit, plan administrators, . . . may be properly named as parties in an ERISA action."); *Pikas v. Williams Cos.*, 542 F. Supp. 2d 782, 786 (S.D. Ohio 2008) (declining to grant Rule 12(b)(6) motion where pleading alleged that moving defendant is the *de facto* plan administrator even where the plan instrument designated a different entity as the plan administrator). The essential rationale of such cases might best be summarized by another judicial officer in this District, who concisely explained:

> Defendants argue that the claims against them should be dismissed because the only proper parties in this action to recover benefits are the plans themselves. There is apparently a split in authority concerning whether a party other than the ERISA plan itself is the only proper party defendant in a claim brought pursuant to § 1132(a)(1)(B). *See Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1194 (8th Cir. 1998) (citing cases). However, in the Sixth Circuit, the proper party defendant in an ERISA action concerning benefits is the party that is shown to control administration of the plan. *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.1988). Here, plaintiff has alleged in her complaint that the defendants made the decision to terminate her benefits under the plans. Plaintiff has alleged sufficient facts to identify defendants as administrators and fiduciaries of the plans, and this branch of defendants' motion to dismiss is denied.

*Little v. UNUMProvident Corp.*, 196 F. Supp. 2d 659, 672 (S.D. Ohio 2002). Similar to many of these cases, the pleading here does not foreclose that American Benefits controlled the administration of the plan or functioned as a fiduciary regardless of formal designation–and the Sixth Circuit's *Daniel v. Eaton Corp.*, 839 F.2d 263, teaches that control can subject entities other than a plan to a claim under § 1132(a)(1)(B).

Today's conclusion is a notably close call with which this Court has admittedly wrestled,

but as the Children's Plaintiffs' briefing recounts, they have pled factual allegations that, necessarily construed in their favor, raise sufficiently the issues of American Benefits' discretionary authority or control over (or relationship to) the Plan. The Court cannot simply ignore or render of no import the actions and word selection of American Benefits' Spieth. American Benefits dismisses the pleading in this regard as "scant allegations" that pale in comparison to the contextual weight of the totality of the other factual allegations and of the Plan language itself. (Doc. # 45, at 9.) But this Court can not and will not ignore reasonable inferences or assign weight to factual allegations in a Rule 12(c) analysis. Accordingly, although concerned about American Benefits' argument, this Court declines to dismiss the § 1132(a)(1)(B) claim against American Benefits on the foregoing grounds. The Court notes, however, that even the Children's Plaintiffs recognize that "[t]he evidence may ultimately demonstrate that [American Benefits] was not the entity interpreting the Plan's definition of experimental and investigational treatment and denying the Children's Plaintiffs' claims." (Doc. # 39, at 9.) The Rule 12(c) motion *sub judice* is not the mechanism for resolving this issue.

This leaves for disposition American Benefits' position that dismissal is warranted because, even if the company is deemed a proper party to the § 1132(a)(1)(B) claim for benefits, the pleadings establish that the Children's Plaintiffs impermissibly seek benefits that the Plan plainly excludes. To support this contention, American Benefits points to the purported exclusionary language contained in the plan targeting "experimental" or "investigational" treatment.

This Court recently addressed the issue of the alleged exclusionary language in a January 15, 2010 Opinion and Order that addressed a similar attempt by Dickey and the Plan to prevail

13

on related counterclaims brought by Robert and John Doe. (Doc. # 65.) In denying dismissal, the Court noted *amicus* briefing by the Children's Plaintiffs and explained:

> Dickey and the Plan assert that the plan provides that experimental or investigational treatment is excluded *per se* from coverage and defines treatment as "experimental" and "investigational" when reliable evidence shows that the drug or treatment employed is the subject of an on-going Phase I or Phase II clinical trial. Dickey and the Plan assert that just such a scenario exists here.
>
> The Does disagree and argue that only review of the administrative record can answer the question of whether the treatment John Doe received falls within the exclusionary language of the plan. Weighing in as essentially amicus curiae, the Children's Plaintiffs also take issue with the argument for dismissal. The Children's Plaintiffs posit that "this Court can only determine whether the treatment at issue was 'experimental or investigational' by reviewing the administrative record and evaluating the process under which the Plan Administrator decided to deny benefits for the successful treatment undergone by John Doe." (Doc. # 38, at 2.) Moreover, the Children's Plaintiffs disagree with the contention that the plan language involved forecloses the benefits sought here.
>
> This Court recognizes that the determination of whether the requisite reliable evidence exists to show that the drug or treatment employed is the subject of an on-going Phase II clinical trial (as opposed to a clinical study outside such classification) is not properly resolved by the pleadings presented here. The Court necessarily accepts all factual conclusions presented by the pleadings as true, but not the conclusions contained within those pleadings. Thus, regardless of the scope of the potentially exclusionary language–an issue that the Court need not and does not resolve here–there exists a question as to whether facts exist to invoke or render inapplicable such language. As the briefing opposing dismissal well documents, the pleadings suggest such a question. The administrative record will provide the answer.

(Doc. # 65, at 10-11.) This same rationale compels denial of judgment on the pleadings here. Necessarily resolving all inferences in favor of the Children's Plaintiffs, this Court cannot conclude that they have failed to present a plausible claim for relief.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** American Benefits' motion for judgment on the pleadings. (Doc. # 28.)

**IT IS SO ORDERED**.

                                                 /s/ Gregory L. Frost
                                            GREGORY L. FROST
                                            UNITED STATES DISTRICT JUDGE